United States District Court
Middle District of Florida
Ocala Division

**ANTHONY RALPH HARRINGTON,**

    *Plaintiff,*

v.                                            NO. 5:19-cv-544-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

# Order

Anthony Ralph Harrington brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to review a final decision of the Commissioner of Social Security denying his application for supplemental security income. Under review is a decision by an Administrative Law Judge ("ALJ"). Tr. 12–34. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 15–28, and the parties' briefs, Docs. 21, 22, and not fully repeated here.

Harrington presents one issue: whether the ALJ erred by failing to develop the record regarding his mental limitations. Doc. 21.

Harrington was a janitor and a small business owner. Tr. 88. He stopped working in 2008 because he went through a divorce and had to raise his daughter on his own. Tr. 66. In August 2014, he applied for supplemental security income.[1] Tr. 353. He alleges he is disabled because of depression,

---

[1] The ALJ states "the claimant amended the alleged onset date to the application date of August 26, 2014." Tr. 15. The ALJ also references August 15, 2014, as the application date.

anxiety, panic attacks, ADHD, personality disorder, high blood pressure, and high cholesterol. Tr. 401.

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

A claimant's residual functional capacity ("RFC") is the most he can do despite his limitations. 20 C.F.R. § 416.945(a)(1). The "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). An ALJ "will not give any special significance to the source of an opinion" on an RFC. *See* 20 C.F.R. § 416.927(d)(3).

A claimant has the burden of establishing disability and must produce evidence to support the claim, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), while the ALJ has a duty to develop a full and fair record, *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). If an ALJ fails to fulfill his duty to fully develop the record and "the record reveals evidentiary gaps which result in unfairness or clear prejudice," remand is warranted. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted).

If a medical source "cannot or will not give [the Social Security Administration] medical evidence about [a claimant's] impairment …, [the Social Security Administration] may ask [the claimant] to have one or more

---

Tr. 16, 17, 38. Harrington states the application date is August 15, 2014. Doc. 21 at 1 (citing Tr. 64, 98). The Commissioner uses "August 2014" as the application and onset date. Doc. 22 at 2, 5, 6, 7, 11 (citing Tr. 15, 17, 27, 38, 353). The precise application or alleged onset date is immaterial here.

physical or mental" examinations. 20 C.F.R. § 416.917. The Social Security Administration generally "will not request a consultative examination until [it] has made every reasonable effort to obtain evidence" from the claimant's medical sources. *Id.* § 416.912(b)(2).

Contrary to Harrington's argument, the ALJ fully developed the record, and substantial evidence supports the decision. Harrington fails to show evidentiary gaps resulting in unfairness or clear prejudice, and he fails to show the ALJ needed additional information to make an informed decision.

The ALJ found Harrington suffers from severe impairments including organic mental disorders and anxiety-related disorders but has no impairment or combination of impairments that meets or medically equals the severity of an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17–18. The ALJ observed that no treating or examining physician found otherwise. Tr. 18.

The ALJ evaluated the severity of Harrington's mental impairments under the psychiatric review technique ("PRT"). Tr. 18–20. The ALJ found that, consistent with the record, Harrington has moderate limitations in each of the functional areas of the analysis. Tr. 19. The ALJ stated, "There is elsewhere in this opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis." Tr. 20.

In the RFC, the ALJ accounted for Harrington's moderate limitations in mental functioning:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform less than a full range of medium work as defined in 20 CFR 416.967(c). **He could perform work that requires up to 30 days to learn the techniques, acquire**

3

> **the information and develop the facility for average performance**. He could lift/carry 25 pounds frequently and 50 pounds occasionally. He could stand/walk and sit for 6 hours in an 8-hour workday. He could occasionally ascend and descend stairs. He should avoid hazards in the workplace, such as unprotected areas of moving machinery, height, ramps, ladders, scaffolding and on the ground unprotected areas of holes and pits. He could frequently balance, stoop, crouch, kneel and crawl, but he could not climb ropes, scaffolds or ladders exceeding 6 feet. **He has nonexertional limitations that frequently effect his ability to concentrate upon complex or detailed tasks, but he remains capable of remembering, understanding and carrying out the above job instructions. He could make work related judgments and decisions, he could respond appropriately to supervision, coworkers and work situations and he could deal with changes in a routine work setting. He should avoid stressful situations. For example, he could only occasionally work with coworkers in a team, occasionally work directly with the public and occasionally work with coworkers where interpersonal interaction is required. He should work in an environment where he makes few decisions and uses little judgment**.

Tr. 20–21 (emphasis added).

In determining the RFC, the ALJ considered the medical evidence as a whole. *See* Tr. 24 ("The record as a whole, [], indicates an adequate functional ability."). The evidence includes the supplemental anxiety questionnaire Harrington completed in September 2014, Tr. 23, 418–20, and records of mental health treatment after the application date, *see* Tr. 25, 571, 583–85 (October 2014; admitted to the hospital through the "Baker Act" for suicidal and racing thoughts, feeling helpless and hopeless, severe depression, and no motivation after losing custody of his daughter; at discharge he showed a bright affect, good insight and good judgment, good impulse control, and good memory; treatment included medication and group therapy; advised to see an outpatient psychiatrist); Tr. 25–26, 590 (February 2017; admitted to inpatient facility for suicidal ideations, increased agitation and anxiety, and depression

because of the stress of finding a new place to live; at discharge he was alert and oriented, calm, compliant, and happy to be discharged; no longer presented a danger to himself or others; compliant with medication, no adverse reactions; and reported that he enjoys outdoor activities); Tr. 26, 587 (March 2017; reported normal sleep and good medication efficacy; easily distracted and paranoid, but an otherwise unremarkable mental status exam—appropriate rapport, appropriately dressed and groomed, normal interactions, average intelligence, good (immediate) memory, normal psychomotor activity, fair insight and fair judgment, logical thought process, ideas of reference but fine mood, coherent speech, and appropriate affect; and denied suicidal/homicidal ideations, delusions, or hallucinations); Tr. 26, 692 (August 2017; unremarkable mental status exam); Tr. 26, 690 (January 2018, complained of anxiety, acknowledged fair sleep and fair medication efficacy with no side effects, and had an anxious mood, but an otherwise unremarkable mental status exam); Tr. 26, 688 (May 2018; oriented and spontaneous interaction, appropriately dressed and groomed, average intelligence, good immediate and past memory, depressed and anxious mood, expansive affect, denied hallucinations, tangential thought process, racing thoughts, slow psychomotor activity, easily distracted, and poor insight and judgment). *See also* Tr. 24 (citing Tr. 586–662 ("[H]is mental status evaluations have generally showed that his interactions were spontaneous, the rapport was appropriate, he was polite and cooperative and his speech and behavior was normal.")).

The ALJ also considered Harrington's testimony and activities of daily living. Tr. 23–25.

The ALJ also considered the opinions of Dr. James Meyers, a state agency mental health examiner who reviewed Harrington's file on September

11, 2014. Tr. 22, 103. The ALJ observed Dr. Meyers opined Harrington's complaints appeared to be mildly disproportionate to the objective medical findings and Harrington could perform simple, repetitive tasks and likely could perform those tasks at higher levels. Tr. 22, 103, 108.

The ALJ also considered the opinions of Dr. Sally Rowley, another state agency mental health examiner, who reviewed Harrington's file on November 14, 2014. Tr. 22, 122. The ALJ observed Dr. Rowley opined Harrington could meet the basic mental demands of work on a sustained basis. Tr. 22, 122.

Harrington argues the ALJ erred by failing to develop the record regarding his mental limitations because the record contains no medical opinion based on evidence after the amended alleged onset date. Doc. 21 at 6. He emphasizes that Dr. Rowley's opinions were based on evidence only through July 2014. Doc. 21 at 6–8; Tr. 112–22. He contends evidence from August 2014 and after, including from the two hospitalizations for suicidal ideation, show ongoing symptoms and complaints related to his mental impairments. Doc. 21 at 7–8.

Harrington's argument fails. As the Commissioner contends, Dr. Meyers's and Dr. Rowley's opinions support that Harrington was not disabled when he asserted his disability began. *See* Doc. 22 at 7. And the ALJ relied not only on Dr. Meyers's and Dr. Rowley's opinions but also on evidence post-dating their opinions, including evidence about the hospitalizations. *See* Tr. 25–26; *see also* Tr. 25 ("The Administrative Law Judge has considered material and relevant evidence in the claimant's current file, regardless of date."). The ALJ had the responsibility of assessing the RFC, did not improperly assume the role of a medical provider in assessing the RFC, and did not have to rely on

6

a doctor's opinion about the RFC.[2] *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC.").

Because Harrington shows no error, the Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Anthony Ralph Harrington and **close** the file.

**Ordered** in Jacksonville, Florida, on March 24, 2021.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

---

[2] For an initial determination of a claim involving a mental impairment, the Social Security Administration must make "every reasonable effort" to ensure that a "qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable [RFC] assessment." 42 U.S.C. § 421(h)(1). An ALJ has "regulatory flexibility to evaluate mental impairments to determine their severity." *Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006) (citing 20 C.F.R. § 404.1520a and *Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999)).